NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
A. CARLEY PALMER (Cal. Bar No. 307303)
Assistant United States Attorney
International Narcotics,
Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0282
     Facsimile: (213) 894-0141
     E-mail:    carley.palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-568-AB-2-SK |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S APPLICATION FOR RECONSIDERATION OF ORDER OF DETENTION (18 U.S.C. § 3142(f)) |
| v. | |
| WILLIAM ARIEL MORENO, | Hearing Date: October 23, 2019 |
| Defendant. | Hearing Time: 1:30 P.M.<br>Location:    Courtroom of the<br>             Hon. Steve Kim |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney A. Carley Palmer, hereby files its Opposition to Defendant's Application for Reconsideration of Order of Detention (ECF No. 92).

This Opposition is based upon the attached memorandum of points

//

//

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 18, 2019          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


          /s/
A. CARLEY PALMER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

At defendant William Arial Moreno ("defendant")'s initial appearance, this Court correctly found that he posed a flight risk and a danger to the community, and should be detained. Preliminarily, defendant is a leading member of a large-scale international drug trafficking organization ("DTO"), who faces a ten-year mandatory minimum and the possibility of life in prison. Moreover, when defendant was arrested in this case, he possessed 22 kilograms of cocaine and 16 firearms, including a loaded, unmarked AR-15. Not only does defendant's use of guns to promote drug trafficking render him ineligible for safety valve, it also exposes him to a fifteen-year mandatory minimum sentence once the government supersedes the indictment to charge him with a violation of 18 U.S.C. § 924(c). Notably, the wiretap investigation shows that defendant -- who has a domestic violence conviction and is thus prohibited from possessing firearms -- is in the habit of using guns illegally. Namely, he convinced a drug customer (also forbidden from possessing firearms) to store an AR-15 on defendant's behalf.

Defendant's mandatory-minimum sentence, extensive drug trafficking activities, and demonstrated ability to access large stores of guns and ammunition all show that he poses a clear danger to the community and has both the incentive and opportunity to flee. Accordingly, and because defendant has not adequately rebutted the statutory presumption created by Congress, the government respectfully requests that the Court continue to detain him pending trial.

## II. FACTS

Defendant was the second-in-command of a sophisticated organization that used cars with hidden compartments to import kilogram quantities of heroin and cocaine from Mexico and then to distribute those drugs throughout the country. (ECF No. 1.) The government's wiretap investigation (supported by seizures of several kilograms of drugs and tens of thousands of dollars in drug proceeds) shows that defendant -- working directly with the DTO leader-- was integral to the operation. He bought the cars for alteration; he coordinated and led cross-border caravans of trap cars filled with drugs; he inspected cocaine for purchase; he mailed drugs across the country; and he took steps to avoid detection by law enforcement. (Id.) Wiretap intercepts also show that he convinced a drug customer (himself a convicted domestic abuser) to store a "too hot" AR-15 for defendant, which law enforcement then seized. (See Exh. 1.)

Defendant also stored large stashes of drugs and guns at his Downey home. On September 26, 2019, when defendant was arrested on the indictment, officers found 22 kilograms of cocaine, 16 firearms, ammunition, and magazines. (See Exh. 2.) The weapons included:

- In defendant's living room, underneath a couch cushion, a 9mm handgun;

- In defendant's bedroom closet, a .40 caliber handgun;

- In defendant's bedroom, underneath his mattress, a .380 caliber handgun; and

- In sheds in defendants' yard:[1] a loaded AR-15 style rifle, with no serial number; a loaded SKS style rifle; a loaded revolver; a

---

[1] Defendant initially denied having access to the sheds, saying only his gardener used them. He later provided the keys.

2

1  loaded .22 caliber handgun; a loaded .380 caliber handgun; a loaded
2  .357 caliber handgun; three loaded 9mm handguns; five other firearms;
3  a high-capacity Glock magazine; a gun barrel; and miscellaneous
4  ammunition, magazines, and gun holsters.
5  (See id.)  At no point during this investigation was it legal
6  for defendant (who was convicted of domestic violence in 2013) to
7  possess guns, let alone to possess them in furtherance of a drug
8  trafficking operation.  See 18 U.S.C. § 922(g)(9); 18 U.S.C. 924(c).

**III. ARGUMENT**

Pretrial detention without bail is appropriate where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  18 U.S.C. § 3142(e); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).  "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where, as here, the defendant is charged with a serious drug crime with a statutory maximum sentence of ten or more years, it is presumed that the defendant is a danger and a flight risk and that no conditions or combination of conditions will reasonably assure either his appearance or the safety of the community. 18 U.S.C. § 3142(e)(2)(A); 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  Even if a defendant proffers evidence to rebut that presumption, "the

presumption of flight or danger does not burst or disappear." United States v. Ward, 63 F. Supp.2d 1203, 1209 (C.D. Cal. 1999) (citing cases). Rather, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986)) (quotation marks omitted). The Court considers four factors in determining whether detention is warranted: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including family and community ties and past criminal conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

### A. Defendant poses a significant danger to the community.

Defendant's operation of a sophisticated DTO poses a clear danger to the community. Notably, the statutory presumption in favor of detention "represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." Dominguez, 783 F.2d at 707.[2]

---

[2] The legislative history of the Act indicates that one purpose of the expanded detention provisions was to authorize detention "where there is a strong possibility that a person will commit additional crimes if released." United States v. Cox, 635 F. Supp. 1047, 1054 (D. Kan. 1986) (quoting legislative history) (quotation marks omitted). Congress also noted that those charged with major drug felonies are often in the business of importing or distributing

4

Defendant's use of guns to further his operation only increases that danger.  "Whether guns are used as the medium of exchange for drugs sold illegally or as a means to protect the transaction or dealers, their introduction into the scene of drug transactions dramatically heightens the danger to society."  See Smith v. United States, 508 U.S. 223, 239 (1993) (internal citation and punctuation omitted).

### B. Defendant poses a substantial flight risk.

Defendant also has the means and motive to flee.  Preliminarily, defendant's access both to large amounts of cash (on a single occasion, he delivered $21,000 in drug proceeds) and to his family in Mexico (who he visits approximately every other month) provide him with the means to evade justice.  See United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1986) ("The connections necessary to secure over one kilogram of heroin may reflect the resources necessary to escape with ease to another jurisdiction.").  Moreover, his mandatory-minimum sentence of ten or fifteen years' imprisonment, and maximum penalty of life imprisonment, provide him with incentive to flee the District.  See United States v. Townsend, 897 F.2d 989, 994-95 (9th Cir. 1990) (holding that the district court properly considered "penalties possible under the present indictment" as providing an "incentive to consider flight," and noting that electronic monitoring cannot assure prevention of flight).

### IV. CONCLUSION

For the foregoing reasons, the Court should deny defendant's application for reconsideration of his detention order.

---

dangerous drugs, and thus "pose a significant risk of pretrial recidivism."  H.R. Rep. No. 98-1030, at 20 (1984), 1984 U.S.C.C.A.N. 3182, 3203.  Notably, "[a] single drug dealer with a well connected system of distribution can wreak more havoc on a community than an armed bank of thieves or gangsters."  Cox, 635 F. Supp. at 1055.